UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

25-CR-60144-SMITH/HUNT

CASE NO. _____

21 U.S.C. § 846
21 U.S.C. § 841(a)(1)
21 U.S.C. § 853
18 U.S.C. § 2

UNITED STATES OF AMERICA

vs.

SERGEI MARGULIAN and
DAMARY MENDEZ,

Defendants.
_____/

FILED BY ___BM___ D.C.

Jun 17, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances were defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3.	A controlled substance assigned to "Schedule II" meant that the drug had a high potential for abuse, the drug had a currently accepted medical use in treatment in the United States, or a currently accepted medical use with severe restrictions.

4.	Pursuant to the CSA and its implementing regulations, oxycodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b). Oxycodone, sometimes prescribed under the brand name OxyContin or in combination with acetaminophen under the brand name Percocet, was used to treat severe pain. Oxycodone, like other opioids, was highly addictive.

5.	Medical practitioners, such as physicians and nurse practitioners, who were authorized to prescribe controlled substances by the jurisdiction in which they were licensed to practice medicine, were authorized under the CSA to prescribe, or otherwise distribute, controlled substances, if they were registered with the Attorney General of the United States. 21 U.S.C. § 822(b); 21 C.F.R. § 1306.03. Upon application by the practitioner, the Drug Enforcement Administration ("DEA") assigned a unique registration number to each qualifying medical practitioner, including physicians and nurse practitioners.

6.	Chapter 21 of the Code of Federal Regulations, Section 1306.04, governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." Moreover, "[a]n order purporting to be a prescription not issued in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances." *Id.*

2

7. All prescriptions for controlled substances had to be "dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner." 21 C.F.R. § 1306.05(a).

8. Pursuant to Florida Statute Title XXXII, Chapter 458, a physician who provided professional services in a pain management clinic was required to "perform a physical examination of a patient on the same day that the physician prescribes a controlled substance to a patient at a pain-management clinic." Additionally, "[i]f the physician prescribes more than a 72-hour dose of controlled substances for the treatment of chronic nonmalignant pain, the physician must document in the patient's record the reason for prescribing that quantity." Fla. Stat. Ann 458.3265.

## THE DEFENDANTS AND RELEVANT ENTITIES

9. Healing Health Center, LLC ("Healing Health") was a company formed under the laws of Florida with its principal place of business in Miami-Dade County. Healing Health was a pain management clinic licensed by the Florida Department of Health under License Number PMC1879.

10. Sunrise Healing Health Center, LLC ("Sunrise Healing Health" and, together with Healing Health, the "Clinics") was a company formed under the laws of Florida with its principal place of business in Broward County, Florida. Sunrise Healing Health was a pain management clinic licensed by the Florida Department of Health under License Number PMC1869.

11. Defendant **SERGEI MARGULIAN**, a resident of Miami-Dade County, was a medical doctor, licensed with the DEA to prescribe controlled substances under License ME123809, and the owner and operator of Healing Health and Sunrise Healing Health.

12.     Defendant **DAMARY MENDEZ**, a resident of Miami-Dade County, was an employee of the Clinics.

## COUNT 1
## Conspiracy to Distribute a Controlled Substance
## (21 U.S.C. § 846)

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around January 2021, and continuing through in or around August 2024, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants,

**SERGEI MARGULIAN and
DAMARY MENDEZ,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with persons known and unknown to the Grand Jury, to distribute a controlled substance, that is, distributing oxycodone, outside the scope of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1).

It is further alleged that the controlled substance involved in the conspiracy attributable to the defendants as a result of their own conduct, and the conduct of other conspirators reasonably foreseeable to them, is a mixture and substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(C).

## PURPOSE OF THE CONSPIRACY

3. It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) prescribing dangerous and addictive controlled substances, including oxycodone, outside the usual course of practice and not for a legitimate medical purpose; (b) selling these prescriptions for cash payments in order to generate and conceal large profits; (c) operating under the pretense of pain management clinics, which allowed the conspirators to disguise the unlawful nature of their business; and (d) diverting the proceeds for their personal use and benefit and to further the conspiracy.

## MANNER AND MEANS

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among others, the following:

4. **SERGEI MARGULIAN** and **DAMARY MENDEZ** registered the Clinics as pain management clinics with the Florida Department of Health.

5. **SERGEI MARGULIAN**, **DAMARY MENDEZ**, and their co-conspirators charged patients at the Clinics an initial consultation fee of approximately $300, in cash or by credit card, followed by an approximately $250 fee for each subsequent visit, also in cash or by credit card, whether or not the patient saw a doctor.

6. **SERGEI MARGULIAN**, a medical doctor with a DEA registration, prescribed controlled substances, including oxycodone, to patients who came to the Clinics without regard to

5

medical need, and on many occasions without having examined, consulted with, or even seen the patients for many months.

7. **SERGEI MARGULIAN** prescribed oxycodone for patients on numerous dates when **MARGULIAN** was not present in the Clinics and had not seen the patients.

8. On dates when **SERGEI MARGULIAN** was not present in the Clinics and had not seen the patients, including when he was out of the country, **DAMARY MENDEZ** and other co-conspirators sent **MARGULIAN** lists that contained patients' names, dates of birth, and the number of pills of oxycodone to prescribe to them, knowing that **MARGULIAN** had neither seen nor examined those patients on that date and knowing that **MARGULIAN** would write electronic prescriptions for oxycodone to them.

9. **DAMARY MENDEZ** recruited patients to Healing Health and helped them obtain prescriptions for oxycodone 30mg from **SERGEI MARGULIAN**, knowing that **MARGULIAN** had neither seen nor examined the patients. **MARGULIAN**, knowing that these were new patients recruited by **MENDEZ**, issued electronic prescriptions for oxycodone 30mg to these patients without regard to medical need and without having seen and evaluated these patients.

10. **SERGEI MARGULIAN**, without regard for the individualized needs of his patients at the Clinics, commonly prescribed oxycodone 30mg, which is the highest short-acting dosage strength of oxycodone and is highly addictive and dangerous.

11. **SERGEI MARGULIAN**, **DAMARY MENDEZ**, and their co-conspirators ignored obvious signs of addiction and drug-diversion in patients of the Clinics but nevertheless issued and caused to be issued prescriptions for oxycodone.

12. Despite receiving letters from major pharmacies notifying him that they would no longer fill prescriptions written by him for controlled substances, **SERGEI MARGULIAN** continued to prescribe controlled substances and, on multiple occasions, made false representations to these pharmacies in an attempt to persuade them to fill the prescriptions he wrote, including that the Clinics accept medical insurance and that **MARGULIAN** used a multidisciplinary approach to treating patients' pain at the Clinics, including physical therapy, chiropractic therapy, and other services tailored to patients' individualized needs.

13. In total, from in or around January 2021 through in or around August 2024, **SERGEI MARGULIAN** prescribed at least 2,933,013 pills of oxycodone to patients of Healing Health and Sunrise Healing Health.

All in violation of Title 21, United States Code, Section 846.

## COUNTS 2-7
### Distributing a Controlled Substance
### (21 U.S.C. § 841(a)(1))

1. The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2. On or about the dates and for the defendants specified as to each Count below, in Miami-Dade and Broward Counties, in the Southern District of Florida, and elsewhere, the defendants did knowingly and intentionally distribute a controlled substance, that is, distributing oxycodone, through prescriptions that were issued without a legitimate medical purpose and outside the usual course of professional practice:

| COUNT | DEFENDANT(S) | DATE | PATIENT | CONTROLLED SUBSTANCE |
|---|---|---|---|---|
| 2 | SERGEI MARGULIAN; DAMARY MENDEZ | January 6, 2022 | M.D. | Oxycodone 30mg |
| 3 | SERGEI MARGULIAN; DAMARY MENDEZ | January 6, 2022 | C.L. | Oxycodone 30mg |
| 4 | SERGEI MARGULIAN | May 12, 2023 | M.P. | Oxycodone 30mg |
| 5 | SERGEI MARGULIAN | May 14, 2024 | G.R. | Oxycodone 30mg |
| 6 | SERGEI MARGULIAN | July 15, 2024 | M.R. | Oxycodone 30mg |
| 7 | SERGEI MARGULIAN | July 16, 2024 | J.P. | Oxycodone 30mg |

In violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATIONS

1. The allegations of this Indictment are hereby re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **SERGEI MARGULIAN** and **DAMARY MENDEZ**, have an interest.

2. Upon conviction of a violation of Title 21, United States Code, Section 841, or a conspiracy to commit such offense as alleged in this Indictment, the defendant shall forfeit to the United States any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such offense, and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offense, pursuant to Title 21, United

States Code, Section 853.

3. The property directly subject to forfeiture as a result of the alleged offenses includes, but is not limited to, the following:

  i. Approximately $9,350.00 seized from Healing Health Center LLC on or about August 5, 2024, $8,600.00 from a safe, and $750.00 from a desk drawer;
  ii. Approximately $1,008.98 seized from account number 1251743663 at PNC Bank held in the name of **SERGEI MARGULIAN** on or about August 6, 2024;
  iii. Approximately $7,060.00 seized from account number 8706229690 at Wells Fargo Bank held in the name of **SERGEI MARGULIAN** on or about August 6, 2024;
  iv. Approximately $6,496.05 seized from account number 898118405961 at Bank of America held in the name of Aestheta LLC on or about August 6, 2024;
  v. Approximately $28,449.21 seized from account number 898115778772 at Bank of America held in the name of **SERGEI MARGULIAN** on or about Augst 6, 2024;
  vi. Approximately $1,054.22 seized from account number 898101637458 at Bank of America held in the name of SM Aesthetics, LLC on or about August 6, 2024;
  vii. Approximately $3,496.46 seized from account number 898127329313 at Bank of America held in the name of Sunrise Healing Center LLC on or about August 6, 2024;
  viii. Approximately $3,989.52 seized from account number 898101637445 at Bank of America held in the name of SM Wellness, LLC seized on or about August 6, 2024;
  ix. Approximately $1,109.44 seized from account number 898114240751 at Bank of America held in the name of Sunset Health Center, LLC on or about August 6, 2024; and
  x. Approximately $3,350.45 seized from account number 898107344525 at Bank of America held in the name of **SERGEI MARGULIAN** on or about August 6, 2024.

All pursuant to Title 21, United States Code, Section 853.

A TRUE BILL

FOREPERSON

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

LORINDA LARYEA, ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

JACQUELINE Z. DEROVANESIAN
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

CASE NO.: 25-CR-60144-SMITH/HUNT

v.

SERGEI MARGULIAN and
DAMARY MENDEZ,
                                    /
                 Defendants.

**CERTIFICATE OF TRIAL ATTORNEY**

**Superseding Case Information:**
New Defendant(s) (Yes or No) _____
Number of New Defendants _____
Total number of new counts _____

**Court Division** (select one)
☐ Miami   ☐ Key West   ☐ FTP
☑ FTL     ☐ WPB

I do hereby certify that:

1. I have carefully considered the allegations of the Indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.
2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, 28 U.S.C. §3161.
3. Interpreter: (Yes or No) No
   List language and/or dialect: _____
4. This case will take 7-10 days for the parties to try.
5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I   ☐ 0 to 5 days
   II  ☑ 6 to 10 days
   III ☐ 11 to 20 days
   IV  ☐ 21 to 60 days
   V   ☐ 61 days and over

   (Check only one)
   ☐ Petty
   ☐ Minor
   ☐ Misdemeanor
   ☑ Felony

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
7. Has a complaint been filed in this matter? (Yes or No) No
   If yes, Judge _____ Magistrate Case No. _____
8. Does this case relate to a previously filed matter in this District Court? (Yes or No) No
   If yes, Judge _____ Case No. _____
9. Defendant(s) in federal custody as of _____
10. Defendant(s) in state custody as of _____
11. Rule 20 from the _____ District of _____
12. Is this a potential death penalty case? (Yes or No) No
13. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? (Yes or No) No
14. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No
15. Did this matter involve the participation of or consultation with Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No
16. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

By: _____AUSA_____
JACQUELINE DerOVANESIAN
DOJ Trial Attorney
FL Bar No.     125662

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**: _____**SERGEI MARGULIAN**_____

**Case No**: _____

Count #:  1

Title 21, United States Code, Section 846

Conspiracy to Distribute a Controlled Substance
* Max. Term of Imprisonment:   20 years
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:   3 years to life
* Max. Fine:   $1 Million

Counts #:   2 – 7

Title 21, United States Code, Section 841(a)(1)

Distributing a Controlled Substance
* Max. Term of Imprisonment:   20 years as to each count
* Mandatory Min. Term of Imprisonment (if applicable):   N/A
* Max. Supervised Release:   3 years to life
* Max. Fine:   $1 Million

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: _____**DAMARY MENDEZ**_____

**Case No**: _____

Count #:   1

Title 21, United States Code, Section 846

Conspiracy to Distribute a Controlled Substance
* **Max. Term of Imprisonment**:   20 years
* **Mandatory Min. Term of Imprisonment (if applicable)**:   N/A
* **Max. Supervised Release**:   3 years to life
* **Max. Fine**:   $1 Million

Counts #:   2 – 3

Title 21, United States Code, Section 841(a)(1)

*Distributing a Controlled Substance*
* **Max. Term of Imprisonment**:   20 years as to each count
* **Mandatory Min. Term of Imprisonment (if applicable)**:   N/A
* **Max. Supervised Release**:   3 years to life
* **Max. Fine**:   $1 Million

*Refers only to possible term of incarceration, supervised release and fines. It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.